(86 South. 97)

## ALABAMA GREAT SOUTHERN R. CO. v. HUNT. (7 Div. 616.)

(Court of Appeals of Alabama. June 1, 1920. Rehearing Denied June 15, 1920. On Mandate from Supreme Court, July 27, 1920.)

1. PLEADING ☞53(2)—UNNECESSARILY MULTIPLYING COUNTS OF COMPLAINT IMPROPER PRACTICE.

While the Court of Appeals recognizes the right of a plaintiff to state his case in as many different counts as the ingenuity of counsel can suggest, to pursue the right to the extent of incorporating 21 counts in a complaint against a railroad for personal injuries is merely to invite error and reversal, where two counts would have been sufficient.

2. APPEAL AND ERROR ☞1040(11)—SUBMISSION OF DEMURRABLE COUNTS HARMLESS.

Though certain ▸of the counts submitted to the jury were subject to the demurrers interposed, where the charge of the court was thorough, and clearly required proof of every material fact necessary to recovery, any error in the submission of the counts was harmless and will not work reversal.

3. CARRIERS ☞283(2)—CONDUCTOR WHO PARTICIPATED IN TERRORIZING PASSENGER REFUSED TO PROTECT HIM, WITHIN MEANING OF ALLEGATION.

If a railroad's conductor participated in producing the belief of a passenger that he was being carried to execution as a German spy, such belief having been caused in the passenger's mind primarily by the acts and words of a train boy and another, he refused to protect the passenger, within the allegation of the passenger's complaint, by assuming a hostile attitude toward him, though no formal request for protection was made.

4. TRIAL ☞256(10) — INSTRUCTION GIVING UNDUE PROMINENCE TO PLAINTIFF'S CLAIM NOT ERRONEOUS IN ABSENCE OF REQUEST FOR EXPLANATORY CHARGE.

In an action by a railroad's passenger to recover for injuries when he jumped from a moving train under the belief induced by a train boy, conductor,. and another that he ·was being carried to execution as a German spy, charge given at plaintiff's request, postulating certain facts as a basis for the railroad's negligence, though it might have been properly refused for giving undue prominence to plaintiff's claim, held not positively erroneous; if defendant feared harmful results, it should have asked an explanatory charge.

5. TIME ☞10(4) — SUIT FILED ON MONDAY WHERE STATUTORY PERIOD EXPIRED ON SUNDAY BROUGHT IN TIME.

Where the accident for which plaintiff sued was alleged to have happened December 22, 1917, December 22, 1918, was a Sunday, and suit was filed December 23, 1918, the plea of the· statute of limitations of one year (Code 1907, § 4840) was disproved and not good.

6. CARRIERS ☞284(1)—RAILROAD LIABLE TO, PASSENGER FOR INJURY, INSULT, AND UNLAWFUL ARREST.

When a passenger came on a railroad train,. the railroad and each employé participating in the carriage owed him the duty to exercise the highest degree of care, skill, and diligence· known to very careful and skillful persons engaged in a like business to protect him from injury, insult, and unlawful arrest at the hands of fellow passengers, and, if such duty was not performed, the railroad was liable for all proximately resulting injuries.

7. CARRIERS ☞284(1)—RAILROAD LIABLE FOR INJURIES TO PASSENGER CAUSED TO JUMP FROM TRAIN BY FAILURE TO PROTECT.

If a railroad's failure in duty to protect its passenger produced a situation which would have caused a reasonably prudent person to believe that he was likely to suffer death or great bodily harm at the hands of 'a pseudo secret service agent and the railroad's conductor, and that he might escape such injuries by jumping from the train, and did so, acting on such belief, the railroad is liable for consequent injuries.

**8. CARRIERS ⬅344—BURDEN ON RAILROAD TO SHOW PASSENGER WHO JUMPED FROM TRAIN NOT REASONABLY PRUDENT.**

The burden was on defendant railroad to allege and prove that its passenger, suing for injuries when put in fear and induced to jump from the train to escape, was not a reasonably prudent person, or did not act as such a person would have acted.

**9. CARRIERS ⬅348(10)—INSTRUCTION AS TO RECOVERY BY PASSENGER INDUCED TO JUMP FROM TRAIN HELD NOT ERRONEOUS.**

In an action against a railroad for injuries to a passenger induced to jump from a train when put in fear by the conductor, train boy, and an alleged secret service agent, instruction recognizing right of recovery if plaintiff jumped, acting as a reasonably prudent person under similar circumstances, "in view of the danger as it appeared to plaintiff," held not erroneous on account of the quoted phrase.

**10. CARRIERS ⬅338—CARRIER THREATENING PASSENGER WITH DEATH AS A SPY LIABLE FOR INJURY IN JUMPING FROM TRAIN.**

Whenever a common carrier by direct action or negligent connivance threatens a passenger with summary execution as a spy, besides mutilation of his valuable organs, and thereby produces such terror in his mind as to induce him to alight from a rapidly moving train to escape injury, the carrier is liable, under the sudden emergency doctrine, however wise or foolish the passenger.

Appeal from Circuit Court, De Kalb County; W. W. Haralson, Judge.

Action by Ben F. Hunt against the Alabama Great Southern Railroad Company for damages for injuries suffered while a passenger. Judgment for plaintiff, and defendant appeals. Affirmed originally, but reversed and remanded under directions of the Supreme Court (204 Ala. 504, 86 South. 100).

The following is charge 2, given for the plaintiff:

I charge you that if you believe from the testimony that this plaintiff was treated as he says he was on the occasion when he jumped from the train, and if you further believe that the men operating the train, or any of them, had knowledge of his treatment, or if from the circumstances they were put on notice that Hunt was being imposed upon, then it was the duty of those in charge of the train to protect Hunt, and it is their duty to protect him whether he appeal for it or not, and if those in charge of the train failed to so protect the plaintiff, then the defendant was guilty of negligence.

Assignments 27 and 28 relate to the evidence of the witness Wheeler Stout and his answer, as more fully appears from the opinion itself.

Goodhue & Brindley, of Gadsden, for appellant.

The oral charge of the court and charge 2 given for plaintiff were erroneous. 78 Tex. 385, 14 S. W. 890. The court was in error in admitting the evidence of the witness Stout. 77 Ala. 112; 77 Ala. 14; 132 Ala. 637, 32 South. 299. The court should have directed a verdict for the defendant on counts 10, 11, C, and D. 72 Mass. 224; 113 Ind. 205, 14 N. E. 541; 4 Ind. T. 462, 69 S. W. 937; 22 U. S. (9 Wheat.) 325, 6 L. Ed. 101.

Isbell, Scott & Downer, of Ft. Payne, for appellee.

If a passenger acts as a reasonably prudent man would have acted, in view of the danger as it appeared to him, he is not guilty of contributory negligence. 6 Cyc. 637; 10 C. J. 1100; 132 Ala. 420, 31 South. 598. The trial court properly construed the law, as fully appears from the opinion of the Court of Appeals.

BRICKEN, P. J. This case, on the facts, is an unusual one. The plaintiff's claim and theory, as developed by the evidence, was that he was a passenger on one of the defendant's trains en route to Attalla, Ala., to which point he had purchased a ticket; that while en route to said point he and the "news butch" on the train became involved in an argument as to where the plaintiff would place a suit case, and that thereafter the "news butch" "put Collet on to him." Collet, otherwise referred to in the evidence as "Cabbage," claimed, according to the plaintiff that he (Collet) was a secret service agent, and accused the plaintiff of being a German spy, and, according to the plaintiff's contention, with the knowledge and consent of the conductor of the train, placed plaintiff under arrest, with the assurance that as soon as the train reached Chattanooga he (plaintiff) would be promptly executed. The plaintiff's evidence further tended to show that he had been warned by this so-called secret service agent and defendant's conductor not to attempt to leave the train at Attalla, and when the train reached that point he remained on the train, and that at or near that point the conductor came through the train again, and Cabbage said to him, "I have decided to let this man off at Attalla, if he will meet me at Chattanooga Monday;" and the conductor replied, "No; carry him on up the road above Attalla; I know where there is some dry wood, and I want to split his cods open and run his head through it;" that thereafter plaintiff paid the conductor, in cash, his fare to Chattanooga, and that when the train reached Collbran, a point between Chattanooga and Attalla, Collet said, "Time is up, about the place he believed he would kill him and throw him off; that would be safest;" and, under the pretense of getting a drink of water, he left the actual presence of "Cabbage,"

and jumped out of the window of the moving train, in order to escape the fate of death and other things that he ·imagined awaited him as an alleged German spy. The occurrence is alleged to have happened on the 22d day of December, 1917, while the late war was at its height, and a number of soldiers, some of them armed, are claimed to have been passengers on the train. The plaintiff "was raised in the country on a farm," in Walker county, Ga., was 36 years of age at the time, and had never been on this train before.

The defendant's evidence tended to show that either the plaintiff was drunk, or that his mind was impaired at the time, and that no abuse of the plaintiff was permitted, and that no insults were tendered him ,by any one, though one of defendant's witnesses stated on cross-examination that—

· "He (Collet) was hobnobbing with this boy across the aisle. They were talking. He seemed to have his goat. They were having a lot of fun out of him. * * * It was just a lot of foolishness going along with a lot of boys on the train is the way I looked at it."

The evidence of drunkenness was very slight.

Whether foolishness or not, the result was very serious for the plaintiff and the defendant as well. The plaintiff is shown to have spent the remainder of the night alone, in an injured condition, in the snow along the right of way, and "halfway up Lookout Mountain," where he was picked up and sent to a hospital in Chattanooga. That he was seriously, and perhaps permanently, injured is not seriously controverted, and a jury in the De Kalb circuit court awarded him damages in the sum of $1,000. The defendant appears here and assigns numerous errors in support of its contention that the trial court mistook the law.

[1] The complaint consisted at one time of 21 counts, 1 to 15, and "A" to "F." Ten of these were submitted to the jury, and demurrers were sustained to the other eleven. While this court recognizes the right of a plaintiff to state his case in as many different counts as the ingenuity of his counsel can suggest, we do say that to pursue this right to such an extent as has been done in this case is merely to invite error and reversal. Two counts in the complaint would have been sufficient, and the use of more merely increases the labor on the trial and appellate courts, as· well as enhancing the chance of error. The practice of resorting to such a superabundance of pleading is disapproved by appellate courts generally, and this practice should be avoided. In.no event should the record be needlessly incumbered with so many unnecessary counts in the complaint.

· [2] It is unnecessary to decide whether or not the many counts submitted to the jury were subject to the demurrers interposed. If they were, the charge of the court was so thorough, and so clearly required proof of every material fact necessary to a recovery, that if any error was committed in this connection it would not work a reversal here. Best Park & Amusement Co. v. Rollins, 192 Ala. 534, 68 South. 417, Ann. Cas. 1917D, 929; Vance v. Morgan, .198 Ala. 149, 73 South. 406.

[3] The appellant claims it was entitled to the affirmative charge as .to some counts in the complaint, because it was averred therein that the defendant's agents or servants "negligently failed *and refused* (italics ours) to protect the plaintiff," etc., and that there is no proof that the plaintiff demanded and requested protection, and therefore there could be no refusal. In this we cannot agree with counsel. The record is replete with evidence from which the jury would be authorized to infer at least an implied request for protection. Moreover, if the defendant's conductor participated in producing the unhappy situation of the plaintiff, as some of the evidence tends to show he did, the jury could well infer that he refused to protect his passenger by assuming a hostile attitude towards him, notwithstanding no formal request for protection was made.

[4] The charge given at plaintiff's request, which for convenience we have numbered 2, was not as aptly worded as it might have been, but it is not positively erroneous. The court might have properly refused it for giving undue prominence to plaintiff's claim, but if appellant feared harmful results from this cause it could have asked an explanatory charge.

[5] The accident is alleged to have happened on December 22, 1917, and suit was filed on December 23, 1918. The 22d day of December, 1918, was on Sunday. The plea of the statute of limitations of one year was therefore disproved by the undisputed evidence. Code 1907, § 4840, subd. 11.

[6, 7] When the plaintiff became a passenger on appellant's train the appellant and every one of its employés participating in the plaintiff's carriage owed him the duty of exercising the highest degree of care, skill, and diligence known to very careful and very skillful persons engaged in a like business, to protect him from injury, insult and unlawful arrest at the hands of fellow passengers; and, if this duty was not performed, the law says that the defendant was liable for all proximately resulting injury, no matter how slight the dereliction of duty may have been; and if the failure to perform that duty produced a situation that would have caused a reasonably prudent person to have believed, under the same or similar circumstances, . that he was likely to suffer death or great bodily harm at the hands of a pseudo secret service agent and the defendant's conductor,.

and that he might escape this injury by jumping from the train, and, acting on this belief, the plaintiff jumped and was injured, the defendant is liable.

The appellant contends that the court below took an erroneous view of the law, because it, in substance, recognized a right of recovery if "in jumping from the train the plaintiff acted as a reasonably prudent person would have done under similar circumstances, in view of the danger as it appeared to plaintiff."

Say counsel in their brief:

"We insist that this qualifying phrase, 'in view of the danger as it appeared to plaintiff,' did not correctly express the true doctrine as to the responsibility of the railroad company for the rash action of a passenger who jumped from a rapidly moving train under the circumstances disclosed by this record. The danger might not have appeared to the plaintiff as it would or should have appeared to a person of ordinary intelligence and prudence."

The sum and substance of this contention is this: The situation in which plaintiff claims to have found himself prior to his act of jumping from the train might not have appeared to a reasonably prudent man as being dangerous, or might not have appealed to him as being sufficiently dangerous to warrant the attempt to alight from a moving train, and, if such were the case, the plaintiff could not recover for jumping therefrom and his resulting injuries even though he honestly believed the situation was such as to warrant such action; that, if the plaintiff was subnormal in ability and intelligence, he could not recover, if he failed to do or did something that a reasonably prudent man should have done or should not have done under the same circumstances.

[8, 9] This argument is highly technical—more technical than meritorious. In the first place, the law presumes that the plaintiff was a reasonable prudent person, and that he acted as such, and, if the contrary was true the burden was on the defendant both to allege and prove that the plaintiff was not a reasonably prudent person, or that he did not act as a reasonably prudent person should have acted on that occasion. So that the phrase "in view of the danger as it appeared to plaintiff" meant nothing more nor less than "in view of the danger as it appeared to one whom the law presumes was reasonably prudent," and, given that construction, the ruling of the trial court was correct.

[10] Moreover while few courts, in proper cases, may apply the refined doctrine so earnestly contended for by appellant, this court here and now goes on record that whenever a common carrier, by direct action or negligent connivance, threatens a passenger with summary execution for being a spy, besides the mutilation of his valuable organs, and thereby produces such a state of terror in his mind as to induce him to alight from a rapidly moving train and risk inevitable injury, that carrier will be held liable, be the passenger a Solomon or a simpleton. When preservation of life and the existence of those organs are at stake, the "sudden emergency doctrine" comes into play, and the plaintiff is not chargeable with his heedlessness, provided no conduct of his proximately produced the state of fear. B. R., L. & P. Co. v. Fox, 174 Ala. 657, 56 South. 1013 (point 12).

The judgment appealed from is affirmed.

Affirmed.

Special Term, July 27, 1920. Reversed and remanded, in accordance with the mandate of the Supreme Court in the Case of Alabama Great Southern R. R. Co. v. Hunt, 204 Ala. 504, 86 South. 100.